JENNIFER M. COUGHLIN
MELISSA A. BAST
K&L GATES LLP
420 L Street, Suite 400
Anchorage, AK 99501-1971
Telephone: (907) 276-1969

Attorneys for Defendants, The Salvation Army

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| ELLSWORTH ALEXANDER JAMES,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>THE SALVATION ARMY CHURCH, et al.,<br><br>　　　　　　　　　　Defendants. | **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 5:05-cv-0007-JWS |
|---|---|

I.   **Introduction**

Plaintiff Ellsworth Alexander James ("James") alleges that Peter Gary Hegre ("Hegre") made several defamatory statements about James in late 2003. While James has not sued Hegre, he contends that because Hegre was an officer of The Salvation Army at the time these statements were made, The Salvation Army is vicariously liable for the statements. For the reasons set forth below, James' claims fail and The Salvation Army is entitled to summary judgment and dismissal of all claims against it.

## II.   Facts

In 2002, James applied for the position of Executive Director with a drug and alcohol rehabilitation program in Wrangell, Alaska called Avenues to Recovery, Inc. ("Avenues"). James provided a resume to Avenues (a copy of which is attached as Exhibit 4 to the Affidavit of Jennifer M. Coughlin), and was telephonically interviewed by the Avenues board. He was offered the job, and filled out an application upon his arrival in Wrangell, Exhibit 3 to the Coughlin Affidavit. In the places on the application where a description of his educational background and prior work experience was required, he wrote "see resume" and attached the resume which is included as Exhibit 4 to the Coughlin Affidavit. That application stated that it was "understood and agreed upon that any misrepresentation by [James] in this application will be sufficient cause for cancellation of this application and/or separation from the employer's service if I have been employed." Exhibit 3 at p. 3.

At the time of the events in question, Avenues employed three paid staff (including James) and had a volunteer board of directors who were not paid for their board service. Deposition of Theodora Williams at 9. Hegre's normal employment was as a captain with The Salvation Army, but he also served on the Avenues' Board and had the title of president of the board during this period.

At this time, State grants formed over 90% of Avenues' funding, and was obviously very important to Avenues' continued operations. Deposition of Doug McCloskey at 10. As recounted by William Hogan, Director of DHSS, Avenues had submitted James' resume for the State's consideration in late 2002, and "based on the information contained in the resume, the [DHSS] staff approved his qualifications as appropriate to be an agency director." Exhibit 7 to Coughlin Affidavit. While State regulations do not set out any minimum qualifications for directors of drug and alcohol rehabilitation agencies in general,

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

the State has higher requirements for those agencies that it funds through grants, and expected such directors to have experience in the substance abuse field, with at least a master's degree in a relevant field. Deposition of William Hogan at 8.

After James had been employed for a few months, he applied for a position on the State Advisory Board on Alcoholism and Drug Abuse. As part of that application, he submitted a resume, and provided his social security number. Hogan Dep. at 8-9. However, when DHSS ran his social security number as part of a background check, it was unable to confirm that the social security number provided by James was actually his number. This caused them to take a closer look at his credentials, which they had previously taken at face value. *Id.*

One of the first things DHSS discovered was that James had claimed to have obtained both a master's degree and a Ph.D from "Vernell University" in New York. However, in his listing in the American Psychological Association's membership directory, he claimed that he had received a degree from HSU (the abbreviation used by the APA for Humboldt State University in California) and did not list Vernell. DHSS contacted Humboldt State University, which stated that James had never been enrolled at that institution. DHSS tried to contact Vernell University, but was unable to find that this institution even existed. Hogan Dep. at 10-11.

Additional discrepancies also appeared regarding his work experience, in that the resume submitted to Avenues (and by Avenues to DHSS) indicated that James had been employed between 1999 and 2001 as a buyer for Office Depot, becoming a consultant "providing psychological evaluation, program design and training services" in the 2001-2002 period. In the resume submitted to the State with his application for the State Board, James made no mention of the Office Depot job, and indicated that he had worked as a consultant from 1999 to 2002. Compare Exhibits 4 and 16 of the Coughlin Affidavit.

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

In response to the requests for information from the State, on June 17, 2003, James provided DHSS with transcripts from "Vernell University," copies of his 1983 and 1997 diplomas from Vernell, a copy of his passport, a copy of his entry in the 2001 edition of the American Psychological Association (which identified him as earning a Ph.D in 1997 in clinical psychology from HSU, rather than from Vernell), and certificates indicating completion of certain training in Alaska in 2003. Exhibit 6 to Coughlin Affidavit. In a cover page to the APA information, James stated:

> The following information is an excerpt from the 2001 edition of the American Psychological Association. It should be noted that I have earned multiple degrees from various institutions both in the US and abroad. The institution listed in the directory is not in the US.

However, James did not identify the non-US institution which had awarded him a Ph.D in 1997, nor did he identify the "multiple degrees" he referenced.

On August 1, 2003, DHSS sent Avenues a letter indicating its concerns regarding James, and summarizing its investigation to date. Exhibit 7 to Coughlin Affidavit. As indicated in this letter, DHSS informed Avenues that it could not confirm that James had an advanced degree from an accredited institution, could not confirm any experience related to the behavioral health or substance abuse field, had identified conflicts between resumes submitted, and had identified discrepancies between the source of his Ph.D as presented to the APA and as presented to Avenues and DHSS. The letter stated that until these issues were resolved, grant funds would be withheld. Avenues was given until September 2, 2003 to provide 1) proof of James' graduation at either a master's or Ph.D level from an accredited university; 2) at least two letters or contracts from former employers proving employment in the behavioral health field; and 3) proof of an honorable discharge from the military. Exhibit 7 at p. 3. Finally, Avenues was informed that in order to reinstate its

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

grant funding, Avenues either had to prove that James had the necessary credentials or replace him with an Executive Director who possessed these qualifications. As Director Hogan testified:

> Q: You indicated that the State would give a -- a board a certain amount of leeway, but would want to have an executive director to have certain minimal qualifications. In your opinion, did Mr. James' qualifications meet that minimal standard?
>
> A. They did not.
>
> Q. And was it more concerning to the State that he lacked these qualifications, or that his resume appeared to misrepresent the qualifications that he had?
>
> A. I would say both. Some of both. Again, based on what we had initially seen in Mr. James' resume, we assumed that he did meet the qualifications; and it was only after we began to get additional information that we had reservations or questions about that. So I would say both. That he appeared not to meet the qualifications; and that it appeared as though his resume had been falsified.

Hogan Dep. at 33. James sent DHSS a letter dated August 28, 2003 in which he claimed that he had "traditional training in substance abuse, have been part of a group practice and spent many years as a consulting psychologist[1] working with other cultures, governments, and other structures." However, he did not enclose the documentation that DHSS requested, and DHSS was never able to confirm James' claims regarding this prior work experience to its satisfaction. Hogan Dep. at 16.

---

[1] In his deposition, James initially stated that he did not consider himself a psychologist because that term usually indicates licensure of some kind, and he does not possess this kind of license, nor does he do those things that psychologists would typically do. James Dep. Vol. II at 5-6. When asked why he referred to himself as a consulting psychologist in his August 28 letter, James stated that a "consulting psychologist" was not the same as a "psychologist." James Dep. Vol II at 21.

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

In the meantime, the Avenues' Board was doing its own investigation. Board member Doug McCloskey testified that he read a report done by the GAO concerning an online diploma mill called Degrees-R-Us, where degrees from "Lexington University" could be purchased over the internet. McClosky Dep. at 18-19. In looking at the information available, he noted that the "Lexington University" degree from the diploma mill appeared very similar to the "Vernell University" diplomas that James had recently provided to DHSS. He then went to the "Lexington University" website, and it seemed "eerily similar" to what was displayed on the "Vernell University" website. McClosky Dep. at 20. Finally, he noted that the alumni association for both Vernell and Lexington listed a woman named Missy Leonard Alford from the class of 1962 as president of the alumni association at each institution. Further searching revealed that Ms. Alford (and all of the other members of the alumni association board) were also on the boards of the alumni associations at Vernell, Lexington University, Templeton University and Hampton College, all claiming to have graduated in the same year at each institution. McCloskey Dep. at 21; Exhibit 15 to the Coughlin Affidavit. He therefore concluded that all of these "universities" were diploma mills run by the same organization, and he shared that information with the Avenues' Board. McCloskey Dep. at 22. While James had told the Board that his diploma represented a gathering together of credits that he had earned at other institutions, he refused to produce the transcripts that he claimed to have earned at these other institutions, claiming that it would cost thousands of dollars to translate them from German, and rejecting the offer of having a local German speaker provide an unofficial translation. See Exhibit 13 to Coughlin Affidavit.

By letter dated November 7, 2003, the acting director for the Division of Behavioral Health confirmed to Avenues that the documentation provided by or on behalf of James did not satisfy the requirements set out in Mr. Hogan's August 1, 2003 letter. Exhibit 12 to

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

Coughlin Affidavit. In addition, while the letter made it clear that while the Avenues could hire whomever it wanted, no State funding would be forthcoming until or unless the Avenues could demonstrate that its Executive Director had the appropriate credentials:

> I want to clarify as well, Avenues as an organization may hire anyone they choose to be their Executive Director. However, the State of Alaska has responsibility to fund only programs that have experienced and appropriately educated staff providing services at the local level. Therefore, until further documentation is provided to verify the truth and accuracy of the information that provided the basis for Avenues determining that Dr. James was a qualified applicant and the state supporting Avenues offering Dr. James his current position, the State finds it necessary to continue to withhold grant funds from Avenues. Please be advised, no second quarter funds for the period October 1 through December 31, 2003, or other funding, will be forthcoming until this matter is resolved.

Exhibit 12 to Coughlin Affidavit.

James wrote a letter to the Board dated November 10, 2003 in which he stated that he "will not provide further documentation or give more authorization than I have thus far." Exhibit 13 to Coughlin Affidavit. James stated that "[s]hould my statement not prove sufficient you may consider it a resignation. The conditions of which should include in lieu of my service for the last year, 3 months severance pay and an equal amount of time to catch up files and close or transfer clients." *Id.* The Board did not authorize severance pay, and James ceased working for Avenues. James Dep. Vol II at 33.[2]

---

[2] While James' letter indicated that severance pay should be authorized, he testified that his resignation was not conditional on the Board's willingness to pay the requested severance:

> Q   Was your resignation conditional on their accepting that you would be paid for the next six months?
>
> A   It wasn't conditional. When I wrote this, it was basically up to them. So the resignation was not so that I'm not resigning if you don't do this.

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

While James had originally indicated an intention to sue the State, Avenues, and individual board members, he ultimately ended up suing the Avenues' insurance company, The Salvation Army, and The Salvation Army's claims administrator. Both the insurance company and the claims administrator have been dismissed, leaving The Salvation Army as the sole defendant. See Document 9 (2/23/2006 Order from Chambers) and Document 30 (2/12/2007 Order and Opinion).

James has alleged claims for defamation and libel, tortious interference with economic relations, intentional infliction of emotional, health and economic damages, and civil conspiracy. In discovery responses, James has indicated that his claims are all based on statements allegedly made by Hegre to the effect that James "had committed acts of fraud" and that he "had been fired from [his] post as Director of Avenues to Recovery as a result of these acts of fraud." See Exhibits 1 and 2.[3] For the reasons set forth below, The Salvation Army respectfully requests that all claims against it be dismissed. James cannot carry his burden of proving that the statements at issue are defamatory, particularly when Hegre (as a board member of a non-profit) would have to have been grossly negligent in making these statements in order for liability to attach. Secondly, even if a claim could have been pursued against Hegre, The Salvation Army is not liable for Hegre's voluntary service on a community non-profit board.

---

> The resignation is that consider this a resignation, or this is my resignation if we don't come to some kind of agreement. We didn't come to any kind of agreement. The only agreement after that was that I resign or be fired.

James Dep. Vol. II at 33.

[3] Discovery requests propounded by The Salvation Army are attached as Exhibit 2. James' responses (which James produced without retyping the interrogatory) are attached as Exhibit 1.

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

### III. Argument

For the reasons set forth below, James' claims should be dismissed. While he has pleaded several claims, the common thread between them is James' assertion that Hegre made defamatory statements about him, and that The Salvation Army is liable for these statements because Hegre was a Salvation Army officer. As this assertion does not withstand analysis, all of the claims must be dismissed.

### A. Standard of Proof

"[T]he plain language of [Fed. R. Civ. P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1996). Once the moving party has pointed out the lack of any genuine issue of material fact, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial. In so doing, the nonmoving party may not rest upon mere allegations, but must show that there is sufficient evidence to support a verdict in its favor at trial. Plaintiff's allegations, speculations or conclusions, as well as inadmissible evidence, are insufficient to meet this burden. *See Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991), *cert. granted*, 503 U.S. 958 (1992), and *aff'd*, 508 U.S. 49 (1993); *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988), *amended*, 46 Empl. Prac. Dec. (CCH) ¶ 37,996 (9th Cir. 1988). "Put another way, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor....The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216,

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

1221 (9th Cir. 1995). *See also Forest Oil Corp. v. Union Oil Co.*, 2006 WL 1096312 (D. Alaska 2006).

A genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In the absence of such facts, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323. There can be no genuine issue of material fact where the nonmoving party has failed to show the existence of an essential element to that party's case. *Id.*

> **B.  James Has No Admissible Evidence To Confirm That Hegre Made Any Defamatory Statements.**

James alleges that Hegre made the following defamatory statements: (1) James lied on his resume; (2) James had been fired rather than resigned; (3) James had more than one Social Security Number; (4) James reminded Hegre of the prisoners Hegre worked with in the penitentiary; and (5) James was a thief. James Deposition, Vol. I at 12-13; Vol II at 54-55. In order to prevail on a defamation claim at trial, James will need admissible evidence that certain statements were in fact made by Hegre, were false, and were "published" within the meaning of a defamation claim. Without this proof, James' claims should be dismissed.

James alleges that Hegre made several defamatory statements about James in late 2003. However, the only allegedly defamatory statement that James personally heard occurred in a telephone call between Hegre and James which James alleges his wife overheard because it was broadcast through the answering machine speakerphone. James Dep. Vol. I at 10-11. He also states that the defamatory content of this statement consisted of the following:

> [Hegre] threatened to fire me -- let me say, first, during a phone call on or about 11, 12 November 2003 -- he called my house several times. He left several messages. These messages were agitated at best. When I returned

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969