> his call, he asked me: When are you coming in to resign, or when are you When are you coming in to resign, or when are you going to submit your letter of resignation? I said I would like to talk to the board first, so I would like to be present at the next board meeting. He lost his composure, and he told me that I reminded him of the criminals that he worked with in the penitentiary, that either I turn in my letter of resignation or that he was going to fire me.

*Id.*

In order to be defamatory, a statement has to be "published," which requires that it be communicated by the speaker to a third party. See *State v. Carpenter*, 171 P.3d 41, 51 (Alaska 2007). If the telephone call had been solely between Hegre and James, no question of defamation could arise, as one person does not defame another by speaking solely to that person. James' wife was not included in the conversation through any action of Hegre's: the only reason that James' wife heard Hegre's statements was because the answering machine had turned on, and was broadcasting the conversation. As defamation is an intentional tort, it is difficult to say that an unintentional publication can form the basis for a defamation claim.

However, the more important point is that a statement that James "reminded" Hegre of criminals Hegre had worked with is a subjective opinion which is too vague to be defamatory. Purely subjective opinions that do not imply or declare untrue facts cannot be the basis of a defamation action. See *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-21 (1990); *State v. Carpenter*, 171 P.3d 41, 51 (citing *Milkovich*); *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 183-84 (4th Cir. 1998) (applying *Milkovich*); *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 127 (1st Cir. 1997); *Pope v. The Chronicle Pub. Co.*, 95 F.3d 607, 613 (7th Cir. 1996) (distinguishing between subjective views and objectively verifiable or testable facts). For a statement to be actionable as defamation it must be verifiable with reference to specific facts. *Milkovich*, 497 U.S. at 19-21. Comments that are rhetoric, hyperbole, imaginative expression, or vigorous epithets used "in a loose,

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

figurative sense" are not actionable as defamation. *Id.* (citing *Greenbelt Cooperative Pub. Assoc. v. Bresler*, 398 U.S. 6, 13-14 (1970)) (other citations omitted).

Likewise, statements that are imprecise cannot be the basis for a defamation claim because they are not verifiable by reference to fact. "The vaguer a term, or the more meanings it reasonably can convey, the less likely it is to be actionable." *Levinsky's, Inc.*, 127 F.3d at 129. For example, in *Schibursky v. IBM*, 820 F.Supp. 1169, 1181-82 (D. Minn. 1993), the court concluded that statements like "hard to work with" or "rude" related to personal traits and as a matter of law were too imprecise to be actionable. Similarly, another court found that a statement that a real estate venture was a "scam" was not actionable because the word means different things to different people. *McCabe v. Rattiner*, 814 F.2d 839, 842-42 (1st Cir. 1987). The Court of Appeals for the Seventh Circuit held that a statement that a lawyer was "a very poor lawyer" was not actionable because it was a statement of opinion, not a statement of verifiable fact. *Sullivan v. Conway*, 157 F.3d 1092, 1097 (7th Cir. 1998). Similarly, another court found that the term "trashy" when used to describe a business had too many different meanings to be actionable. *Levinsky's, Inc.*, 127 F.3d at 130. Another court found that the terms "cocky," "con artist" and "bullshit" which were found in a plaintiff's evaluations that were sent to a potential employer were characterizations and opinions of the evaluator and as such were protected as opinions. *Quinn v. Jewel Food Stores, Inc.*, 658 N.E.2d 1225, 1231 (Ill. App. 1995). The court reasoned that the terms were capable of many meanings that could not be proved or disproved with reference to specific facts. *Id.*

Additionally, statements that are relative and that depend upon the speaker's point of view are subjective, and therefore not actionable. *Chaves v. Johnson*, 335 S.E.2d 97, 101 (Va. 1985). The *Chaves* court found that the statements that a person was inexperienced

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

and charged excessive fees were relative statements of opinion that were dependent on the speaker's perspective, and therefore not defamatory. *Id.*

In determining whether a statement is factual, Alaska courts consider "the type of language used, the meaning of the statement in context, whether the statement is verifiable, and the broader social circumstances in which the statement is made." *Sands v. Living Word Fellowship*, 34 P.3d 955, 960 (Alaska 2001) (quoting *Milkovich*, 497 U.S. at 24 (Brennan, J. dissenting) (citations omitted)). In the instant case, the statements that James reminded Hegre of the criminals he worked with in the penitentiary is a subjective opinion and is too vague to constitute actionable defamation. Just like the words "trashy" or "con artist," or the pronouncement that a lawyer was "a very poor lawyer," these statements are not verifiable with reference to specific facts. *See Sullivan*, 157 F.3d at 1097; *Quinn*, 658 N.E.2d at 1231; *Levinsky's, Inc.*, 127 F.3d at 130. These statements clearly depend upon the point of view of the speaker, and vague, subjective opinions cannot be the basis of a defamation claim. *See Sands*, 34 P.3d at 960.

James also relies on a statement that Hegre allegedly made to his supervisor, Major Rudd, which was recorded in a November 21, 2003 memo to file prepared by Major Brian Beveridge on the basis of a phone call made by Major Rudd to Major Beveridge recounting the Rudd-Hegre conversation. Setting aside the multiple levels of hearsay, James claims that this shows that when Hegre was asked by Major Rudd for information in response to a letter that James had written, Hegre referred to James as a crook and a liar and a thief.

As an initial matter, Hegre will have to provide some basis for admitting this statement into evidence, which he has yet to do. Moreover, even if he can get over that evidentiary hurdle, a statement made by one employee to another does not constitute "publication" for purposes of a defamation claim. The Alaska Supreme Court has yet to address the question of whether intra-office or intra-company communications constitute a

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

publication under defamation law. However, numerous other courts have held that intra-company communications do not constitute actionable "publications" for the purpose of defamation claims. *Starr v. Pearle Vision, Inc.*, 54 F.2d 1548, 1552 (10th Cir. 1995); *Crowe v. Wiltel Communication Sys.*, 103 F.3d 897, 899-900 (9th Cir. 1996) (communications between agents, employees, or officers of a corporation are not "published" for the purposes of defamation); *Cabble v. Claire's Stores, Inc.*, 919 F.Supp. 397, 402 (M.D. Ala. 1996) (communications between managerial employees do not constitute publication; communications between non-managerial employees are not publication if they fall within the proper scope of that employee's knowledge or duties); *Messina v. Kroblin Transp. Sys., Inc.*, 903 F.2d 1306, 1309 (10th Cir. 1990); *M.F. Patterson Dental Supply Co. v. Wadley*, 401 F.2d 167, 171 (10th Cir. 1968). Similarly, the Ninth Circuit, applying Nevada law, affirmed summary judgment where the plaintiff "did not present any evidence that the statements about which she complains were communicated to anyone not a Wiltel employee." *Crowe*, 103 F.3d at 900. The court concluded that the plaintiff had failed to prove publication in that case. *Id.*

In light of the above, communications made by Hegre solely to his supervisor in The Salvation Army cannot constitute a "publication" and cannot support The Salvation Army's liability for defamation.

Finally, one of the difficulties in this case has been pinning down precisely what James alleges was said, and to whom. In terms of specifics, James testified that individuals named Steve Murphy, Guy Klabundie and Debra Peterson (or possibly Pettigrew) had told him that Hegre had made various statements, including that Hegre was investigating James' background because James had given false information, that James had misrepresented his credentials, was a liar, a thief, and had more than one social security number. James Dep. Vol. 1 at 13, 15-16. On this basis, James alleges very broadly (but without specific facts)

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

- 14 -

that Hegre was making similar statements in a variety of places, and that all of James' negative interactions with other people in Wrangell are ultimately the result of Hegre's statements (and therefore the responsibility of The Salvation Army). Exhibit 1 to Coughlin Affidavit, response to Interrogatory No. 6. However, James has the obligation to come forward with affidavits or other admissible evidence to clearly establish what specific statements Hegre made (and to whom) that James alleges caused him damage.

In short, James' broad generalizations, speculations or conclusions, as well as inadmissible evidence, are insufficient to overcome a motion for summary judgment. *Columbia Pictures*, 944 F.2d at 1529; *Forsberg*, 840 F.2d at 1419.

### B. The Hearsay Statements About Which James Testified Are Not Defamatory.

To prevail on a claim of defamation, a plaintiff must establish four elements: (1) a false and defamatory statement; (2) unprivileged publication to a third party; (3) fault amounting to at least negligence[4]; and (4) either *per se* actionability or special damages.

---

[4] In the instant case, Hegre's status as an Avenues' board member means that James will have to prove the higher standard of gross negligence in order to impose liability on Hegre, or derivatively upon The Salvation Army for Hegre's actions. AS 09.65.170(a)(1) limits the liability of a nonprofit organization's officer and directors as follows:

> (a) Unless the act or omission constituted gross negligence, a person may not recover tort damages for personal injury, death, or damage to property for an act or omission to act in the course and scope of official duties, from one of the following:
>
> (1) a member of the board of directors or an officer of a nonprofit corporation.. . .

Gross negligence falls between the more general civil negligence and recklessness. Gross negligence "differs from ordinary negligence only in degree, and not in kind.... It signifies more than ordinary inadvertence or inattention, but less than conscious indifference to consequences ... it is, in other words, merely an extreme departure from the ordinary

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

*State v. Carpenter*, 171 P.3d 41, 51 (Alaska 2007); *French v. Jadon*, 911 P.2d 20, 32 (Alaska 1996); Restatement (Second) of Torts § 558 (1977). For the reasons set forth below, even if James could produce admissible evidence regarding the statements he testified were reported to him as having been by Hegre, his defamation claim still fails as a matter of law.

One of the basic principles of a defamation claim is that the plaintiff has the burden of proving that the statement in question is false, and that the truth of an allegedly defamatory statement of fact is a complete defense to an action for defamation. *Fairbanks Publ'g Co. v. Pitka*, 376 P.2d 190, 192-93 (Alaska 1962). Unfortunately for James, most of the allegedly defamatory statements upon which James bases his claims are quite simply true.

James alleges that he has been defamed by Hegre's statement that James lied on his resume and committed fraud. However, these statements appear to be true, based on the evidence provided by James to the Avenues' Board and to the State, and by deposition testimony given in this matter. The application that James submitted for his job at Avenues attached a resume that claimed that James had a Ph.D. He referred to himself as "Dr. James" and displayed diplomas on his wall from both Vernell and the University of Maryland. Deposition of Theodora Williams at 13. After Vernell's status as an institution of higher learning was questioned, James denied that Vernell was a diploma mill, and described Vernell as having gathered together all of the credits that James had obtained at other institutions in Germany and combining them into a degree. McCloskey Dep. at 28-29; see also Exhibit 13, in which James informed the Board that "[t]here are many Universities on the internet that take transcripts from other countries one looked as good as

---

standard of care." *Storrs v. Lutheran Hosps. & Homes Soc'y of Am., Inc.*, 661 P.2d 632, 634 n.1 (Alaska 1983) (quoting Prosser, Torts 183-84 (4th ed. 1971)).

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

another I picked one." However, James refused to produce any transcripts from these alleged German institutions, claiming that it would cost thousands of dollars to translate his transcripts and that Avenues could not afford it. *See* Exhibit 13 to Coughlin Affidavit. He also refused the offer of having a local German speaker do an informal translation of any transcripts that he claimed to have submitted to Vernell. McCloskey Dep. at 14-15; 21-22. *see also* Exhibit 13 to Coughlin Affidavit.

In his deposition, James abandoned the argument that Vernell's degrees were based on coursework completed at other universities, and admitted that he had never submitted any transcripts to Vernell. He also admitted that the sole basis for the diploma was his own self-evaluation of his work:

> Q   What documents did you provide to Vernell in order to get your degrees?
>
> A   I mentioned that in the previous deposition. Vernell University is not unlike many, many universities today in that it gave credit from their own -- toward their own curriculum for previous educational work and life experience. I chose them for that reason. I submitted an evaluation, a small evaluation of my work. And as far as I or any reasonable person could expect, it was evaluated and this is what came from that. My -- go ahead.
>
> Q   When you say you submitted an evaluation of your work, is that an evaluation that you prepared?
>
> A   Yes.
>
> Q   Okay. Go on. What else did you give to them?
>
> A   That was it.
>
> Q   Just your evaluation of your work?
>
> A   Uh-huh.
>
> Q   Were there any transcripts that you also provided?

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

> A   No, I don't believe I provided any transcripts. I could have, but I didn't. And I didn't because, you know, my work should have been enough.

James Dep. Vol. 2 at 41-42.

James also admitted that he had obtained these degrees by filling out a form on the Degrees R Us website, where he was allowed to pick his field of study, the year he wanted his degrees to have been awarded, whether his degrees were going to be with honors, high honors or highest honors (all of which were offered at varying prices), and what he wanted the transcripts to state for a GPA. James Dep. Vol. II at 43-44; see also Exhibit 14 at pp. 8-12. While his transcripts list a large number of classes, with grades for each, James never attended any classes at Vernell. James Dep. at 80-81.

James asserts that the Board hired him on the basis of his experience rather than his credentials:

> They asked me about my education and credentials and I told them, I said, listen, I've been in Europe for the past 20 years, give or take. I've got college credits. I've got many credits. I actually have a Ph.D., but it's not nothing that's going to mean anything here in the United States. I basically set up my own curriculum. If you want someone that can be licensed, I'm not the person you want. I'm not licensed now, nor will I ever be licensed. I don't do those kinds of things... So -- and I made this clear, which is what confuses everything down the road. I said, if you want someone with verifiable credentials, if you want someone that's able to be licensed, I can't do that for you. My value to your organization is in my experience.

James Dep. Vol. 1 at 50-51.

James further argues that if he was hired for his experience, Hegre defamed him by stating that he had lied about his credentials regardless of whether the statements on his resume about his educational background were true or false. In James' mind, questions about his actual educational background are simply not relevant to his claims against The

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

Salvation Army, as he believes that the Board had no right to re-examine his credentials once they offered him a position:

> Q   Do you agree that the State had informed Avenues that if they couldn't prove that you had at least a master's, Avenues' funding would be taken away?
>
> A   Not my problem. If they didn't understand that, if the board did not understand that, then that was between the board and the State, not between me and the State. . . . Now, again, going back to the impetus of your question. The board hired me. The board hired me -- they gave me an offer of employment based on our conversations, based on what I told them that I could deliver. Now, if they misunderstood their relationship with the State, that's not between me and them; that's between them and the State. So if the State was going to withhold funds, that's entirely between the board and the State. It's something they have to iron out.

James Dep. Vol. II at 17, 19.

As credibility issues are not decided on summary judgment, The Salvation Army will assume solely for purposes of summary judgment that James did in fact make the disclosure he claims to the Board. However, whether James' representations about his credentials were critical to the Board's hiring decision has no bearing on whether those representations are lies (which is the issue on a defamation claim). If a person falsely claims to have an advanced degree on an application for a job that merely requires a high school diploma, that person has still lied about his credentials and cannot claim to have been "defamed" when the lie is pointed out.

Furthermore, while James claims that the Board relied solely on his experience, he was unable to provide proof of that experience when challenged by the State to provide two references from prior employers, *see* Exhibit 12 to Coughlin Affidavit. In addition, the work experience James lists on his resume also conflicts with his sworn testimony and with other versions of his resume. For example, on the resume he submitted to Avenues, James

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

states that he worked for a private psychotherapy practice for five years from 1987-1992, performing substance abuse counseling. Exhibit 4 to Coughlin Affidavit. However, in a later resume, he only claims to have been employed as a staff therapist from 1988-1989, and in his deposition, stated that he worked as a staff member for a psychologist in Houston and as the director of the Kiwanee Center for Women for a little more than a year (just prior to and during 1989-1990). *See* Exhibit 8 to Coughlin Deposition; James Dep. Vol. 1 at 52-53.

In addition, the resume that James submitted to the Avenues also represents that as part of James' education, he completed a two year internship in abnormal psychology, completed a one year internship in alcohol and drug counseling, and completed a one year internship for international organizational psychology. *See* Exhibit 4. Merriam-Webster defines an intern as: "an advanced student or graduate usually in a professional field (as medicine or teaching) gaining supervised practical experience (as in a hospital or classroom)."[5] However, as James testified in his August 15, 2008 deposition, none of these "internships" were part of any formal educational process or other organized training. What James considers a "two year internship in abnormal psychology" was the experience he obtained working as a paid psychiatric technician in a hospital in Houston whose name he cannot recall. Similarly, the "one year internship in alcohol and drug counseling" was the same thing as his year of paid employment as a counselor for Houston Therapies (represented as five years of employment as a "therapist" on the resume submitted to Avenues.) Finally, his "one year internship for international organizational psychology" was the work that he had done at Sigma, where he states that he learned from working with

---

[5] In addition, under 12 AAC 60.083. programs of graduate study for a doctorate degree in psychology must include a predoctoral internship with stringent requirements for content, supervision, and numbers of hours.

K&L GATES LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969